UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ROY JAMES EDWARDS,

               Petitioner,

vs.                       Case No. 3:11-cv-310-J-37JBT

SECRETARY, DOC, et al.,

               Respondents.

_____

**<u>ORDER</u>**

Petitioner Roy James Edwards filed a *pro se* Petition for Writ of Habeas Corpus (Petition) (Doc. #1) pursuant to 28 U.S.C. § 2254 on March 30, 2011 pursuant to the mailbox rule. It challenges a 2007 state court (Duval County) conviction for possession of a firearm by a convicted felon and two counts of aggravated assault. Nine grounds for habeas relief are raised. Respondents filed a Response to Petition for Habeas Corpus (Response) (Doc. #15)[1] with Exhibits (Doc. #16) (Ex.).[2] Petitioner filed his Reply to Respondents' Response to Petition for Habeas Corpus (Doc. #20) (Reply) with Exhibits. <u>See</u> Order to Show Cause and Notice to

_____

[1] Respondents calculate the Petition is timely, Response at 3, and the Court accepts this calculation.

[2] The Court hereinafter refers to the Exhibits as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page. Otherwise, the page number on the particular document will be referenced.

Petitioner (Doc. #6).  No evidentiary proceedings are required in this Court.

## STANDARD OF REVIEW

The Court will analyze Petitioner's claim under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).  "By its terms [28 U.S.C.] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions." Harrington v. Richter, 131 S.Ct. 770, 784 (2011).  The exceptions are: (1) the state court's decision was contrary to clearly established federal law; or (2) there was an unreasonable application of clearly established federal law; or (3) the decision was based on an unreasonable determination of the facts.  Id. at 785.

There is a presumption of correctness of state courts' factual findings unless rebutted with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  This presumption applies to the factual determinations of both trial and appellate courts.  See Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims he received the ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.  In order to prevail on this Sixth Amendment claim, he must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both

deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

## PROCEDURAL HISTORY

Upon review of the record, the following transpired. Petitioner was charged by a Second Amended Information with two counts of possession of a firearm by a convicted felon, two counts of aggravated assault, and carrying a concealed weapon. Ex. A at 31-32. The Arrest and Booking Report, in pertinent part, contains the following description:

> On 07/05/06 at 0150, myself and Ofc. G. Osilka responded to 3406 Rogero Rd in reference to an alleged assault involving a firearm.
>
> Upon arrival, we found victim #1 (Ms. Foster) and victim #2 (Mr. Southall) standing inside the house with the door standing open. Ms. Foster began telling us that she and Mr. Southall (boyfriend) were threatened at gunpoint by a known drug dealer they called "Shorty" (suspect). They said he was also carrying brass knuckles in his other hand. She further stated that the suspect punched her on the left side of the face earlier in the night, while the suspect and the witness (Ms. Dinkins/roommate of victims) were arguing outside the house. About that time, both victims observed the listed vehicle drive by and shouted, "There he goes now . . . . and he has a gun!" They pointed to a blue mid-size car going northbound on Rogero Rd. The vehicle was stopped in the 5700 block of Ft. Caroline Rd without incident. The suspect was driving and Ms. Dinkins (witness) was the only passenger. I asked the suspect if he was at the victims' residence earlier and he replied.

"Yes . . . . I know what this is about".  I
then asked if there were any weapons in the
car and he said, "No".  When asked if he
minded if I checked the car for weapons, he
initially said, Why? . . . . not really".  The
suspect was detained outside the car, at which
time a 9mm pistol was discovered by Ofc.
Osilka behind a child's car seat located in
the backseat.  I located some brass knuckles
in the pocket on the back side of the driver's
seat, clearly reachable from the driver's
position.

The suspect was read his Miranda warning via
card, and he voluntarily signed a rights form.
He said he was a convicted felon and knew he
should not have a gun in the car, however, he
said the gun belonged to his fiancee and it
was kept there for safety reasons.  As for the
brass knuckles, the suspect said it was a gift
from his wife and they have never been moved
from the seat pocket.

ID/Records (Id. #64258) verified that the
suspect was a convicted felon.

The suspect was taken back to the residence
where both victims positively identified the
suspect.   Ms. Foster said the suspect
approached her while she was standing in the
doorway and said, "I'm gonna kill your f_____
ass", while pointing a gun at her head.  Mr.
Southall said he was concerned for Ms.
Foster's safety and begged the suspect to just
leave.  Mr. Southall said the suspect then
turned the gun on him and said, 'If you f___
me one more time or call the police, I'll kill
both you all!"  Both victims said the suspect
then left in a blue car with wire rims along
with the witness, Ms. Dinkins.

The suspect denied ever threatening the
victims, but admitted to having only an
argument with Ms. Dinkins outside the
residence.

The suspect's car was seized for forfeiture
proceedings.

Id. at 2.

The state provided Notice of Intent to Classify Defendant as an Habitual Felony Offender. Id. at 88. Initially, Regina L. Wright, an Assistant Public Defender, represented Petitioner. Id. at 22. In the August 2, 2006, State's Discovery Exhibit and Demand for Reciprocal Discovery, Cynthia Gail Dinkins is listed as a Category A witness, with an address of 3604 Rogero Road, Jacksonville, Florida. Id. at 13. On September 1, 2006, the state filed Amended Discovery, listing Ms. Dinkins' address as 3707 St. Isbel [sic] Drive, Jacksonville, Florida. Id. at 20. Thereafter, on September 12, 2006, defense counsel filed a Motion for More Definite Address claiming that Gail Dinkins could not be located at 3707 St. Isabel [sic] Drive East.

In December, 2006, Katherine L. Littell, an Assistant Public Defender, filed three motions in limine: (1) Motion in Limine 1, concerning the 911 recording, id. at 39-40; (2) Motion in Limine II, concerning the brass knuckles, id. at 41-42; and (3) Motion in Limine III, concerning testimony with regard to Petitioner "screaming and yelling at his girlfriend, Cynthia Dinkins, inside the house, that he was standing over Ms. Dinkins threatening her[,]" and with respect to the threats to and/or assaults of the victims/witnesses, id. at 43. On December 7, 2006, the parties entered into a written stipulation that Petitioner was convicted of a felony on July 10, 1998. Id. at 45.

- 5 -

After a jury trial on count five, a charge of possession of a firearm by a convicted felon, the jury returned a guilty verdict, finding Petitioner's "possession was actual possession, and not only constructive possession." Id. at 73.   Petitioner moved for a new trial, and among other issues, presented a claim that the officer who testified the firearm was operable was not qualified as an expert.   Id. at 74.   On February 15, 2007, the trial court denied the motion for new trial. Id. at 76. Judgment and sentence were entered on February 22, 2007. Id. at 89-94.  The trial court sentenced Petitioner to twenty years as an habitual felony offender.   Id. at 92-94.   On March 8, 2007, Ms. Littell filed a notice of appeal on count five.   Id. at 112.

In a proceeding on March 1, 2007, in discussing the up-coming trial on counts two and four of the information, Plaintiff announced a conflict with counsel and a desire to proceed pro se. Ex. F at 21-26.   The trial court found no basis to conclude that counsel was rendering ineffective assistance, and scheduled a hearing on whether Petitioner would be allowed to proceed pro se. Id. at 26-28.   On March 2, 2007, the trial court, after hearing sworn testimony from Petitioner, discharged that office of the Public Defender, and allowed Petitioner to represent himself on counts two and four.  Id. at 30-39.  Thereafter, on March 14, 2007, Petitioner signed a Plea of No Contest and Negotiated Sentence on counts two and four.   Ex. A at 98-99.   The trial court entered judgment and sentence on two counts of aggravated assault on March

14, 2007, and sentenced Petitioner to concurrent four-year sentences.

On direct appeal (count five), M. Gene Stephens, and Assistant Public Defender, filed an <u>Anders</u>[3] brief. Ex. G. On April 18, 2008, the First District Court of Appeal affirmed per curiam. Ex. I. The mandate issued on June 5, 2008. Ex. PD-2 at 2.

On June 17, 2008, pursuant to the mailbox rule, Petitioner filed a pro se Rule 3.850 motion in the trial court. Ex. K at 1-33. Through counsel, Petitioner filed a Supplemental Motion to Vacate/Set Aside Judgment and Sentence. <u>Id</u>. at 38-40. The trial court conducted an evidentiary hearing on August 19, 2009. <u>Id</u>. at 71-160. Jonathan Sacks, Esquire, represented Petitioner in the post conviction proceeding. <u>Id</u>. The trial court, in its order of January 8, 2010, denied post-conviction relief. <u>Id</u>. at 41-58. Petitioner appealed. Ex. L at 210. He filed a pro se appeal brief. Ex. M. The state filed a Notice that State Will Not File Answer Brief. Ex. N. The First District Court of Appeal per curiam affirmed on October 5, 2010. Ex. O. The mandate issued on November 3, 2010. Ex. R. On January 14, 2011, the appellate court denied rehearing en banc.[4] Ex. PD-3 at 2.

On June 26, 2008, Petitioner submitted a petition for writ of certiorari to the Supreme Court of the United States. Ex. S. The

---

[3] <u>Anders v. California</u>, 386 U.S. 738 (1967).

[4] The appellate court did not re-issue the mandate. Response at 3.

state filed a notice that it did not intend to respond to the petition. Ex. T.  The Supreme Court denied the petition for a writ of certiorari on October 6, 2008.  Ex. U.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Ground One

The first ground of the Petition is: "Petitioner was deprived of his Sixth and Fourteenth Amendment of U.S. Constitution right to reasonable assistance of counsel, and due process of law[.]" Petition at 5.[5]  In this ground, Petitioner raises a Sixth Amendment claim asserting he received ineffective assistance of trial counsel.  In evaluating the performance prong of the Strickland ineffectiveness inquiry, the Court recognizes that there is a strong presumption in favor of competence.  The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'"  Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted).

After conducting an evidentiary hearing, the trial court denied the claim of ineffective assistance of trial counsel raised in ground one.  Ex. K at 42-45.  First, the court recognized the

_____

[5] When referencing the Petition, the Court hereinafter refers to the Electronic Filing System designated page numbers.

standard set forth in <u>Strickland</u> for reviewing a claim of ineffective assistance of counsel. <u>Id</u>. at 42. Next, the court, in substantial detail, addressed the ground, made findings of fact, and denied the claim. <u>Id</u>. at 42-45. In denying post conviction relief, the court said:

> In ground one, the Defendant asserts that counsel was ineffective for failing to adequately investigate his case prior to trial. The Defendant claims that counsel failed to investigate the incident, and neglected to interview witnesses and the victims of the assault. More specifically, the Defendant claims that counsel failed to properly investigate the 911 tape concerning the incident for which the Defendant was convicted. The Defendant further states that counsel failed to investigate the serial number on the gun which the Defendant was convicted of possessing during the commission of the crime, which the Defendant claims would have shown that he was not the owner of the gun. Additionally, the Defendant argues counsel failed to inquire as to who actually owned the car which the Defendant was apprehended in on the night of the crime. The Defendant maintains that Rebecca Monnin was the owner [of] both the vehicle and the handgun, and therefore, the Defendant was not in possession of the handgun on the night of the incident. Finally, the Defendant claims that counsel was ineffective for failing to depose all Category "A" witnesses, specifically, Ms. Cynthia Dinkins.

> With regards to the 911 tape, the Defendant argues that this tape was essential to the defense argument that he never committed an aggravated assault against either Mr. Southall or Ms. Foster. At the evidentiary hearing, counsel testified that she had no recollection of the 911 tape. (Exhibit "C," pages 43, 48-49.) In a follow-up email correspondence to the evidentiary

- 9 -

hearing, which was produced for the record,
counsel testified that there was a 911 tape in
the record, but that she could only assume
that she reviewed it, and that she could find
no notes regarding this tape. (Exhibit "D.")
Regardless of counsel's apparent neglect of
the 911 tape, the Defendant fails to state how
this 911 tape would have changed the outcome
of his trial had counsel investigated it
further. The defendant claims that this tape
was essential to the defense that he never
committed an aggravated assault against Mr.
Southall or Ms. Foster, but neglects to offer
any explanation as to why or how.
Accordingly, the Defendant has failed to
establish that there is a reasonable
probability that the outcome of the proceeding
would have been different absent counsel's
alleged deficient performance. <u>Strickland</u>,
466 U.S. at 687.

Ex. K at 42-43.

The court further explained:

With regards to counsel failing to
investigate the serial number of the gun, the
Defendant argues that had counsel researched
the serial number on the gun, it would have
been discovered that the gun was owned by
Rebecca Monnin, not the Defendant. However,
section 790.23, Florida Statutes, allows for
convictions based upon constructive possession
of a handgun. Therefore, actual ownership of
the gun is not needed for a conviction, as
proof of ownership of a handgun is not
required to establish constructive possession
under section 790.23. <u>Johnson v. State</u>, 685
So.2d 1369, 1371 (Fla. 2d DCA 1996). Counsel,
as she explained at the evidentiary hearing,
was well aware of this fact. (Exhibit "C,"
pages 43, 46-47.) However, for added measure,
counsel did request a gun history report from
the State Attorney's Office, who explained
that there was none. (Exhibit "C," page 24).
Furthermore, there were two civilian witnesses
whose account of this incident leading to this
conviction placed the firearm in the
Defendant's possession at the time of the

- 10 -

> incident. (Exhibit "C," page 46.) Under the
> first prong of <u>Strickland</u>, it is required that
> a defendant establish that counsel's
> representation fell below "an objective
> standard of reasonableness." 466 U.S. at 688.
> Considering that this was a constructive
> possession case, counsel's explanation at the
> evidentiary hearing provides a sufficient
> explanation for not further pursuing the gun
> history in this case.

Ex. L at 44.

The court continued:

> The Defendant also claims counsel was
> ineffective for failing to investigate the
> owner of the vehicle in which the Defendant
> was apprehended. The Defendant claims the
> fact that Ms. Monnin was the owner of both the
> gun and the vehicle is evidence which negates
> any charge of possession of a firearm by a
> convicted felon, and should have been pointed
> out by counsel at trial. For the reasons
> stated above concerning counsel not
> investigating the serial number of the gun,
> counsel was also not ineffective for failing
> to trace the owner of the vehicle.
>
> Finally, the Defendant alleges that
> counsel was ineffective for failing to depose
> all Category "A" witnesses in this case.
> Regarding the Defendant's assertion that
> counsel failed to interview the victims in
> this case, counsel testified at the
> evidentiary hearing that the previous counsel
> for the Defendant in this same case had
> already deposed all of the necessary
> witnesses, and therefore, there was no need to
> do so again. (Exhibit "C," page 44.)

Ex. L at 44-45.

The trial court concluded that defense counsel was not
ineffective for the reasons stated in its order. Te First District
Court of Appeal affirmed the trial court's decision. Ex. O.

- 11 -

With regard to the 911 tape, defense counsel filed a Motion in Limine 1, asking that the state be prohibited from introducing any evidence related to the recording of the 911 call, asserting the recording is inadmissible hearsay evidence, it is not an excited utterance, it is cumulative evidence, and it is not probative but is highly prejudicial. Ex. A at 39-40. The trial court granted the motion. Id. at 39. Obviously counsel was well-aware of the contents of the 911 tape and made a strategic decision to seek a ruling to prevent its use by the state.

With respect to ownership of the gun, defense counsel testified at the evidentiary hearing she was unable to obtain a gun history report for the gun in question as the State Attorney informed her there was none. Ex. K at 93-94. Defense counsel also testified that "we weren't able to trace it[.]" Id. at 113. However, she also explained to Petitioner that it did not matter who owned the gun. Id. Instead, the focus would be on whether Petitioner possessed the gun. Id. Here, as noted by Respondents, two eyewitnesses testified that Petitioner possessed the gun. Response at 5. The question of ownership of the vehicle was not of major import since Petitioner was apprehended while driving the vehicle.

Finally, with respect to the claim of failure to depose witnesses, the record shows Ms. Wright, an Assistant Public Defender, deposed the officers and victims. Ex. M. At the evidentiary hearing, Petitioner attested that the house where the

- 12 -

incident took place had been condemned, but Ms. Dinkins "would have been on Isabella Street."  Ex. K at 131.   The record before the Court reflects that Ms. Dinkins could not be found at that address. Ex. A at 21.   The record also shows that when the subject of Ms. Dinkins came up at trial, Ms. Littell said: "[a]nyway this woman is gone, we haven't even deposed her."  Ex. D at 219.

Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided.   Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.  See Response at 5.

Petitioner is not entitled to relief on ground one of the Petition, the claim of ineffective assistance of trial counsel. Deference under AEDPA should be given to the state courts' decisions.   Petitioner raised the issue in his Rule 3.850 motion, the trial court denied the motion, and the appellate court affirmed.   The state courts' adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.

### Ground Two

In the second ground, Petitioner claims:   "Petitioner was deprived of his Fourth, Sixth, and Fourteenth Amendment of U.S. Constitution right to privacy, reasonable assistance of counsel, and due process of law."  Petition at 6.  In essence, Petitioner

- 13 -

claims counsel violated the Sixth Amendment right to effective assistance of trial counsel by failure to investigate an alleged illegal search and seizure without a warrant or probable cause, and failure to file a motion to suppress the seized evidence. Id. The trial court rejected this claim and held:

> In ground two, the Defendant avers that counsel was ineffective for failing to "investigate" the stop and search of the vehicle which the Defendant was driving when he was apprehended. The Defendant claims that his drivers license was valid, he presented valid car insurance, and that the car did not belong to him. The Defendant further states that the Jacksonville Sheriff's Office officers did not inform him of the reason he was being stopped until after two officers searched the inside of his vehicle and the Defendant was placed into custody. The Defendant claims that this constituted an illegal search, where the officers hand [sic] neither a warrant nor probable cause for the search. The Defendant further claims that the officers did not have the authority to search beyond the immediate control of the Defendant, and that there was no reason for the officers to suspect that there was a weapon in the vehicle. The Defendant refers to the stop as an "investigative stop", and that counsel was ineffective for failing to file a motion to suppress at trial with respect to the evidence of the handgun found during this search.
>
> According to the Arrest and Booking Report, the arresting officers arrived at a residence in response to an alleged assault involving a firearm. The two victims told the officers that they were threatened at gunpoint by the Defendant. While interviewing the two victims, both victims observed a vehicle drive by and contemporaneously notified the officers at the scene that the Defendant was in that vehicle and that he had a gun. That same vehicle was subsequently pulled over by police shortly after the identification by the

- 14 -

victims the same night, with the Defendant
driving the vehicle.  The police asked the
Defendant whether he was at the victim[']s
residence earlier, and the Defendant stated,
"Yes . . . I know what this is about."  The
officers asked the Defendant if there were any
weapons in the car, to which the Defendant
replied that there were not.  The officers
then asked the Defendant if he mind [sic] if
they search the vehicle, to which he replied,
"Why? . . . not really."  The Defendant was
then detained outside of the vehicle, at which
time the officers found a 9mm pistol in the
back seat of the car.  (Exhibit "E.")

Ex. K at 45-66.  The court explained:

With regards to the initial traffic stop
and detention, section 901.151(2), Florida
Statutes, reads:

Whenever any law enforcement officer
of this state encounters any person
under circumstances which reasonably
indicate that such person has
committed, is committing, or is
about to commit a violation of the
criminal laws of this state or the
criminal ordinances of any
municipality or county, the officer
may temporarily detain such person
for the purpose of ascertaining the
identity of the person temporarily
detained and the circumstances
surrounding the person's presence
abroad which led the officer to
believe that the person had
committed, was committing, or was
about to commit a criminal offense.

This law is a codification of the principle
that all warrantless seizures of a person must
be founded on at least a reasonable suspicion
that the individual seized is engaged in
wrongdoing. Cox v. State, 975 So. 2d 1163,
1166 (Fla. 1st DCA 2008); see also United
States v. Mendenhall, 466 U.S. 544, 552 (1980)
(noting that the Fourth Amendment requires all
searches and seizures to have "an objective

- 15 -

justification.")  This applies to the stop of
a motor vehicle, as an officer's stopping a
person's motor vehicle constitutes a seizure
and detention under the Fourth Amendment.
Cox, 975 So. 2d at 166.

Ex. K at 46.  The court continued:

> Whether an officer's suspicion is
> reasonable is determined by the totality of
> the circumstances that existed at the time and
> is based solely on the facts known to the
> officer before he made the stop.  LaFontaine
> v. State, 749 So. 2d 558, 560 (Fla. 2d DCA
> 2000).  As for vehicle stops, "[a]ll that is
> required for a valid vehicle stop . . . is a
> founded suspicion on the part of the officer
> effectuating the stop that the occupants have
> committed or are about to commit a crime."
> London v. State, 540 So.2d 211, 213 (Fla. 2d
> DCA 1989).  The temporal proximity between the
> tip, the police response, and the sighting of
> the suspect is "of crucial significance" to
> the determination of reasonable suspicion.
> Highsmith v. State, 843 So. 2d 369, 370 (Fla.
> 2d DCA 2001).

> In the instant case there is no question
> that the arresting officer had reasonable
> suspicion to stop the Defendant's car.  The
> arresting officer was speaking to the two
> victims, who earlier that night called in the
> complaint to the police, when the victims
> shouted to the officer that a passing car was
> the vehicle the Defendant was driving that
> night.  The victims had just explained to the
> officers that the Defendant had threatened
> them at gunpoint, as well as struck one of
> them.  Therefore, the officers had reason to
> believe that the Defendant had committed a
> crime.  In addition, the car was stopped by
> the police on a nearby road just a short time
> after this identification by the victims.

Ex. K at 46-47.

The court directly addressed the issue of whether the search

violated the Fourth Amendment:

- 16 -

The next issue is whether the search of the car violated the Fourth Amendment, and thus, should have been raised by counsel at a suppression hearing. In general, a law enforcement officer may seek consent to search a vehicle during a legal traffic stop, and the officer need not have an objective justification or reasonable suspicion to ask for consent to search. Cox, 975 So. 2d at 1168. Voluntary consent is an exception to the warrant requirement. Id. Whether consent is voluntary is a question of fact to be determined under the totality of the circumstances and established by a preponderance of the evidence. Id. To conclude that a search is involuntary, the court must find that the defendant's "will [was] overborne and his capacity for self-determination critically impaired." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973). In the instant case, the arresting officer asked the Defendant if he minded if the officer check the car for weapons, the Defendant replied "Why? . . . Not really." From review of the record, nothing demonstrates that the defendant's consent was the produce [sic] of unlawful police coercion which would render the consent involuntary.

Regarding the scope of the search, "[t]he scope of a warrantless search of a car is no broader or narrower than the scope of a search authorized by a warrant supported by probable cause." Kimball v. State, 951 So. 2d 35, 37 (Fla. 1st DCA 2007); United States v. Ross, 456 U.S. 798, 823 (1982). The scope is defined by the object of the search and the places in which there is probable cause to believe it may be found. Kimball, 951 So.2d at 37. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that my conceal the object of the search." Id. (citing Ross, 456 U.S. at 825). Here, the officer was searching the car for weapons, as the victims told the officers that the Defendant was carrying a gun and brass knuckles. Thus, the Defendant's assertion that the officer exceeded the scope

- 17 -

of the search for weapons by looking in the
back seat of the passenger compartment of the
vehicle is incorrect.

For the reasons given supra, counsel was
not ineffective for failing to pursue a motion
to suppress the evidence of the firearm found
in the vehicle.  Applying <u>Strickland</u>, even if
counsel's conduct here was outside the wide
range of reasonable professional assistance,
and this Court finds that it was not, the
Defendant still cannot show that counsel's
deficient performance prejudiced the defense,
as the record demonstrates that the firearm
was obtained via a lawful stop and search of
the vehicle which the Defendant was driving.
466 U.S. at 687.

Ex. K at 47-48.  The appellate court affirmed the trial court's

decision.

Upon review, at a post-trial hearing on March 1, 2007, counsel

explained that Petitioner asked her to file a motion to suppress,

but she determined there was "no valid reason to do so."  Ex. F at

25.  And, with regard to the remaining two counts, counsel also

found no valid reason to file a motion to suppress.  <u>Id</u>. at 25-26.

In addition, at the evidentiary hearing on the post conviction

motion, counsel explained her decision not to file a motion to

suppress:

I did not feel that there was a suppression
issue and I reviewed the police report prior
to this hearing and that was based on the
police officer stopping the vehicle because
the witnesses had told them while they were
talking to them that the vehicle that just
drove by was Mr. Edwards, that there was a gun
in that car, so they, therefore, had a reason
to stop the vehicle.  Those witnesses were
reporting a crime and then, according to the
police report, Mr. Edwards agreed to let them

- 18 -

> look in it.  So I -- you know, I didn't -- did
> not see a valid motion to suppress that I
> could file.

Ex. K at 97.

Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided.  Accordingly, Petitioner's ineffectiveness claim is without merit since he has neither shown deficient performance nor resulting prejudice.  See Response at 6.

The decisions of the state courts are entitled to deference under AEDPA.  The decisions involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground two, the claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### Ground Three

In his third ground, Petitioner raises another claim of ineffective assistance of counsel.  Petition at 8.  He alleges that counsel failed to investigate Petitioner's background for mitigation evidence, including evidence of psychological problems. Id.  In addition, he asserts that counsel's failure to call his

- 19 -

uncle as a witness at sentencing also constituted deficient performance by counsel.  Id.

Petitioner raised this claim in his post conviction motion, and the trial court denied the claim finding:

> In ground three, the Defendant contends that counsel was ineffective for failing [to] investigate the Defendant's background and present mitigation evidence at sentencing. The Florida Supreme Court recently addressed this issue in Pagan v. State, 34 Fla. L. Weekly S561 (Fla. Oct. 1, 2009) . . . .
>
> Even if counsel should have presented mitigating evidence at sentencing, the Defendant still must show that counsel's failure to do so prejudiced him. Anderson v. State, 18 So. 3d 501, 512 (Fla. 2009). "In assessing prejudice, we reweigh the evidence in aggravation against the totality of the mental health mitigation presented during the postconviction evidentiary hearing to determine if our confidence in the outcome of the penalty phase trial is undermined." Id. (citing Hannon v. State, 941 So. 2d 1109, 1134 (Fla. 2006)); see also Asay v. State, 769 So. 2d 974, 985 (Fla. 2000) ("When evaluating claims that counsel was ineffective for failing to present mitigating evidence, this Court has phrased the defendant's burden as showing that counsel's ineffectiveness 'deprived the defendant of a reliable penalty phase proceeding.'")

Ex. K at 48-49.

The court considered and credited counsel's testimony as follows:

> At the evidentiary hearing counsel stated that she met with the Defendant at the jail to discuss sentencing, at which time he told her that he did not wish to call any witnesses, nor did he wish to speak himself at the hearing. (Exhibit "C," pages 30-31.)  When

asked if she considered having the Defendant evaluated by doctors for any mitigation evidence to present at sentencing, counsel stated:

> I did not. I looked through all my notes that I received this morning and there is no mention of me getting him evaluated by a doctor or that that was a concern or that he had ever indicated to me that he had any such issue. I can say that I'm very liberal about getting my clients evaluated. I normally do get them evaluated before a major sentencing hearing, just in case a psychologist had something that we can use for mitigation. But I didn't have any concerns regarding Mr. Edward[s]' mental health and he made it pretty clear to me that he did not want to present anything at the sentencing hearing. So I did not do anything.

(Exhibit "C," pages 31-32.)   The Defendant claims in his motion that he had previously been diagnosed with post-traumatic stress disorder.   The Defendant stated at the evidentiary hearing that he told counsel of this diagnosis, and that he wished to have his uncle speak at the sentencing hearing. (Exhibit "C," page 60.)   However, the Defendant's claims are completely contradictory to what counsel stated on the record at the evidentiary hearing.   (Exhibit "C," pages 30-32.)   Furthermore, the Defendant admitted that the uncle he wished to have speak at the sentencing hearing knew little to nothing about the Defendant's psychological issues. (Exhibit "C," page 60.)   In light of the Court's decision in Pagan, 34 Fla. L. Weekly S561, it is clear that counsel had no absolute duty to present mitigating evidence at sentencing in this case.   Further, not calling any witnesses was reasonable since counsel did not know of any witnesses to call, nor did she know of, or have reason to believe, that the Defendant had any

> psychological issues which warranted an
> evaluation by a medical professional.
> Therefore, counsel[']s representation
> regarding this matter was not ineffective.
> The Defendant has also failed to demonstrate
> that counsel's failure to call any witnesses
> at sentencing deprived the defendant of a
> reliable penalty phase proceeding, and
> therefore cannot show that he suffered any
> prejudice. Asay, 769 So.2d at 985.

Ex. K at 49-50. The First District Court of Appeal affirmed this decision.

The transcript from the sentencing proceeding on February 22, 2007, shows that when the trial court asked if Petitioner wanted to present evidence concerning the habitual felony offender issue, defense counsel conferred with Petitioner. Ex. A at 147. Mention was made concerning one prior offense. Id. at 148. When the court inquired as to whether or not the defense wished to offer evidence at sentencing, defense counsel responded that there would be no witnesses, except Petitioner. Id. at 149. With respect to the presentence investigation, defense counsel again conferred with Petitioner. Id. at 150. Thereafter, defense counsel mentioned a prior offense and Petitioner's concerns about that listed offense. Id. Thereafter, Petitioner provided sworn testimony. When counsel asked if Petitioner had any mental health issues, he responded: "[o]nly in prison once." Id. at 153. He said he was diagnosed with a stress disorder, suffered from depression, and the Department of Corrections classified him as a "psyche 3." Id. When asked about the "psyche 3" classification, Petitioner

- 22 -

explained that he needed to be watched now and then, and on occasion might need medication. _Id_. However, when asked whether the stress disorder had something to do with the current offense, Petitioner responded: "[b]asically I just think that alcohol and the marijuana played a role in my incident and I made a bad choice with that." _Id_. at 154. Petitioner repeated he made a bad choice. _Id_.

During argument, counsel referenced the presentence investigation report showing Petitioner had a difficult young life as he was raised in foster homes with limited family in the area. _Id_. at 156. She stated: "[a]s you can see, I didn't even call any witnesses to speak on his own behalf. It's Mr. Edwards and myself arguing in front of the court today."[6]  _Id_. She also referenced that Petitioner suffers from depression and has a problem dealing with stress. _Id_. Petitioner did not interject that he desired to have his uncle called to testify.

Concerning ground three, Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had given the assistance that Petitioner has alleged should have been provided. Accordingly, Petitioner's ineffectiveness claim is without merit

---

[6] At the post conviction evidentiary hearing, Petitioner testified that his uncle was not present at the sentencing proceeding. Ex. K at 144.

since he has neither shown deficient performance nor resulting prejudice. <u>See</u> Response at 6-7.

Upon review, there was no unreasonable application of clearly established law in the state court's decision to reject the <u>Strickland</u> ineffectiveness claim. Indeed, the decision rejecting the claim of ineffective assistance of trial counsel is entitled to deference under AEDPA. The adjudication of the state courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on ground three of the Petition, the claim of ineffective assistance of trial counsel, because the state courts' decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

<b>Ground Four</b>

In his fourth ground, Petitioner claims that trial counsel failed to object to evidence of government misconduct or to file a motion to suppress the evidence. Petition at 9. Petitioner alleges that the state prosecutor conspired with the arresting officer to take the firearm out of the county to test the operation of the gun. <u>Id</u>. The trial court denied Petitioner's claim. In doing so, the court noted that there was no suggestion that the gun was tampered with in any way. Ex. K at 51. Additionally, the

- 24 -

court recognized that the focus of Petitioner's claim was that the officer violated an internal operating order by taking the gun home.[7] Id. The court concluded that "a mere break in the chain of custody is not in and of itself a basis for exclusion of physical evidence." Id. (citation omitted). Indeed, the court found that Petitioner could not establish with any likelihood that the firearm would have been suppressed had counsel filed a motion to suppress. Id. As a result, the court concluded that Petitioner has not show prejudice, failing to satisfy the second prong under Strickland. Id. at 51-52. In sum, the trial court denied post conviction relief, and the appellate court affirmed.

At trial, Officer Jeff Brown testified that he test-fired the firearm and it was found to be operable. Ex. D at 194. He explained that he took the firearm to his home, located in Baker County, and test-fired it. Id. at 197. Officer Brown returned the firearm to the Assistant State Attorney, and Officer Brown notified the Assistant State Attorney of the date he fired the weapon. Id. at 198. Defense counsel objected to the admission of the test-fired casings, but the trial court admitted the evidence of the casings finding "[t]his goes to the weight of the evidence." Id. at 198-99. Defense counsel cross-examined Officer Brown concerning

---

[7] During the post conviction evidentiary hearing, defense counsel testified that she considered any evidence of a violation of an internal operational procedure as going to impeachment of the witness, not grounds for a motion to suppress. Ex. K at 103.

his test-firing the weapon at his home.  <u>Id</u>. at 214-15.  Brown
explained that he conferred with the State Attorney prior to taking
the weapon home.  <u>Id</u>. at 215-16.

There is no assertion or suggestion by Petitioner that the
firearm found in the vehicle was not operational.  The Arrest and
Booking Report reflects that Petitioner told the officers the gun
"belonged to his fiancee and it was kept there for safety reasons."
Ex. A at 2.  Of import, Gene Southall, a victim/witness, testified
that the gun introduced at trial was the same gun and it was in the
same condition as it was the night Petitioner pointed it at his
head.  Ex. D at 168.

Based on the above, Petitioner has not shown that a reasonable
probability exists that the outcome of the proceeding would have
been different if his lawyer had given the assistance that
Petitioner has alleged should have been provided.  Accordingly,
Petitioner's ineffectiveness claim is without merit since he has
neither shown deficient performance nor resulting prejudice.

The decisions of the state courts are entitled to deference
under AEDPA.  They involved a reasonable application of clearly
established federal law, as determined by the United States Supreme
Court.  Therefore, Petitioner is not entitled to relief on ground
four of the Petition, the claim of ineffective assistance of trial
counsel, because the state courts' decisions were not contrary to
clearly established federal law, did not involve an unreasonable
application of clearly established federal law, and were not based

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## Ground Five

In his fifth ground, Petitioner claims that his counsel was ineffective for failure to object to the imposition of a public Defender lien without proper notice by the court. Petition at 11. Respondents rely on the decision of the trial court in denying this claim. Response at 9. Upon review of the record, Petitioner's claim has no merit. At sentencing the trial court announced that it was imposing a $1,000.00 Public Defender lien. Ex. A at 158. The court advised Petitioner that he had the right to contest the lien. Id. Petitioner was further advised that he had to do it in writing within thirty days. Id.

The trial court denied this claim finding full compliance with statutory requirements on the part of the court and no ineffectiveness of counsel for failing to object. Ex. K at 53-54. The trial court's denial of Petitioner's claim of ineffective assistance of counsel was affirmed by the First District Court of Appeal. Thus, there is a qualifying decision under AEDPA.

The adjudication of this claim of ineffective assistance of counsel was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner has not established the first prong of

- 27 -

Strickland, that trial counsel's performance was deficient.   Nor has he shown prejudice, as required by the second prong of Strickland.   Therefore, ground five of the Petition does not warrant habeas relief.

### Ground Six

In ground six, Petitioner claims trial counsel was ineffective for failure to attack an unverified information.   Petition at 12. Specifically, Petitioner complains that the information was unsupported by a sworn affidavit from a material witness.   The trial court denied this ground finding that the information contained the "testimony of the designated assistant state attorney who properly certified that testimony under oath has been received from the material witness(es) for the offense." Ex. K at 55.   The court further found that there was no valid basis for an objection to the information; therefore, Petitioner failed to satisfy either prong of Strickland.   Id.

Upon review, the record shows that the trial court made a finding of probable cause to detain on July 5, 2006.   Ex. A at 9. The state filed a second amended information on November 28, 2006. Id. at 31-32.   The Arrest and Booking Report contains the sworn document by a law enforcement officer.   Id. at 2-3.   The second amended information is signed by the Assistant State Attorney and contains the following:

> Personally appeared before me, Alan Mizrahi, Assistant State Attorney, for the Fourth Judicial Circuit of the State of

Florida, in and for Duval County, who is personally known to me, and who being first duly sworn, says that the allegations as set forth in the foregoing information are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged, and that this prosecution is instituted in good faith, and hereby certifies that testimony under oath has been received from the material witness(es) for the offense.

Id. at 31-32. Petitioner's assertion in ground six is belied by the record.[8]

Based on all of the above, Petitioner is not entitled to habeas corpus relief on a claim of ineffective assistance of counsel for failure to attack the information. The sworn oath of the prosecutor that he or she received testimony under oath from the material witness or witnesses for the offense is sufficient under Florida law. Bromell v. McNeil, No. 07-61917-CIV, 2008 WL 4540054, at *17 (S.D. Fla. Oct. 10, 2008) (not reported in F.Supp.2d); Ruiz v. Sec'y, Dep't of Corr., No. 8:06-cv-2086-T-17TGW, 2008 WL 786327, at *4-*5 (M.D. Fla. Mar. 20, 2008) (not reported in F.Supp.2d) (rejecting a claim of ineffective assistance of counsel for failing to move for dismissal based on a deficient information, unsupported by a sworn statement of a material witness). As explained in State v. Perkins, 977 So.2d 643, 646

---

[8] Assuming the second amended information had been dismissed, the state would have simply cured the deficiency by filing a new information. Petitioner has not, and cannot, allege the second amended information fails to state a crime. Therefore, the trial court was not deprived of jurisdiction.

(Fla. 5th DCA 2008), the assistant state attorney signing the information charging a felony does not have to personally administer the oath and question the material witness or witnesses upon which the charges are based, but simply receive and consider the sworn testimony.

Petitioner is not entitled to relief on ground six of the Petition, the claim of ineffective assistance of trial counsel. Deference, under AEDPA, should be given to the state courts' decisions. Petitioner raised the issue in his post conviction motion, the trial court denied the motion, and the appellate court affirmed. The state courts' adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts.

### Ground Seven

In his seventh ground, Petitioner complains that trial counsel was ineffective for failure to inform the trial court of an irreconcilable conflict between counsel and Petitioner. In denying this ground, the trial court said:

> In ground eight, the Defendant claims that counsel was ineffective for failing to inform this Court of the alleged conflict between herself and the Defendant. This Court notes that ". . . a disagreement between counsel and client that arises when the attorney's professional judgment dictates an action or strategy different from that desired by his or her client does not constitute a legal or ethical conflict of interest requiring the appointment of new counsel." <u>Gonzales v. State</u>, 993 So.2d 55, 57 (Fla. 5th DCA 2008). In the instant case there was a

Nelson hearing conducted, and this Court
determined that counsel was not providing
ineffective assistance.   At the evidentiary
hearing counsel testified as follows regarding
her relationship with the Defendant:

> Mr. Skinner: Now regarding issue No.
> 8, and Mr. Edwards is alleging that
> you failed to tell the court of an
> irreconcilable conflict between him
> an[d] yourself. First, did you ever
> feel the need to bring to the Court
> - bring that to the Court's
> attention, and, if so, tell us why
> or why not?

> Ms. Littell: Not until we had the
> Nelson hearing and obviously that
> came about at some, you know, at
> some point.   But prior to that,
> which was after sentencing his - on
> his case, Mr. Edwards and I did have
> a difficult relationship, but it
> certainly wasn't anything that I
> felt prohibited me from representing
> him to my bets [sic] ability, so I
> never raised that issue with the
> Court.

> Mr. Skinner: Okay.   And did you
> represent him to the best of you[r]
> abilities?

> Mr. Littell: Yes, I did.

(Exhibit, "C," page 38.)  Here, there was no
legal or ethical conflict between counsel and
the Defendant which would require counsel to
file a motion to withdraw.   Counsel stated
that her relationship with the Defendant,
albeit strained, did not prevent her from
effectively carrying out her duties as
counsel.   Upon review of he record, nothing
suggests that counsel's representation fell
below any reasonable standard of assistance in
this case, and therefore the Defendant's claim
fails to satisfy either prong of the
Strickland test.  466 U.S. at 687.

Ex. K at 55-56 (footnote omitted).

Of import, after he was convicted and sentenced on the possession of a firearm by a convicted felon count, Petitioner complained to the court about a conflict with counsel. He raised the matter on March 1, 2007, after the February 22, 2007 sentencing proceedings. Ex. F at 21. Generally, he complained that counsel failed to file some things, she failed to work with him, and he did not get all of the documentation from the first case. Id. at 21-22. When the court asked Petitioner to be specific as to what counsel failed to provide him, he responded sworn statements. Id. at 23. Petitioner admitted that he already had copies of the deposition transcripts. Id. Both the prosecutor and defense counsel advised the court that there were no sworn statements other than the depositions, which had already been provided to Petitioner. Id. at 23-24.

Ms. Littell stated that she previously provided Petitioner with the discovery documents in the case, but she would provide him with a second copy. Id. at 24. Petitioner complained that counsel failed to file "things" that were important to his defense. Id. at 25. When the court asked counsel if she refused to file anything in the possession of a firearm case, she responded that Petitioner asked her to file a motion to suppress, and she declined to do so because she found no valid reason to file one. Id. With respect to the aggravated assault charges, counsel said that she had not

yet discussed potential motions to suppress with her client, but
she had not found any grounds for such. Id. at 25-26.

Petitioner responded that "it's a conflict of interest for
counsel going forward with me." Id. He stated that they "don't
get along," and "[s]he's not working in the best of her ability
towards this case toward me." Id. The court concluded "there is
absolutely no basis to conclude that counsel is rendering
ineffective assistance of counsel which means I am not going to
order a new lawyer for you." Id. at 26-27. Petitioner expressed
a desire to represent himself, id. at 27, and the court considered
that request on March 2, 2007. Ex. F at 30-39. After hearing from
Petitioner, the court discharged the Public Defender. Id. at 39.

Upon review, there was no unreasonable application of clearly
established law in the state court's decision to reject the
Strickland ineffectiveness claim. The First District Court of
Appeal affirmed the trial court's decision. The decisions of the
state trial and appellate courts are entitled to deference under
AEDPA.

The adjudications of the state courts resulted in decisions
that involved a reasonable application of clearly established
federal law, as determined by the United States Supreme Court.
Therefore, Petitioner is not entitled to relief on ground seven,
the claim of ineffective assistance of trial counsel, because the
state courts' decisions were not contrary to clearly established
federal law, did not involve an unreasonable application of clearly

- 33 -

established federal law, and were not based on an unreasonable
determination of the facts in light of the evidence presented in
the state court proceedings.

### Ground Eight

In his final claim of ineffective assistance of trial counsel,
Petitioner claims his counsel's failure to call Ms. Dinkins
amounted to deficient performance.[9]  The trial court, in denying
this ground, credited the testimony of defense counsel at the
evidentiary hearing that she was concerned that Ms. Dinkins would
have testified that Petitioner was driving the vehicle, there was
a gun in the vehicle, and Petitioner was a convicted felon.  Ex. K
at 57.  Defense counsel explained that she considered this
testimony detrimental to the defense because it would have placed
Petitioner in close proximity to the firearm immediately after the
two victims/witnesses told the police that Petitioner displayed a
firearm and drove off in a vehicle.  Id.

Upon review of the record, before trial, defense counsel filed
a Motion in Limine III to prevent testimony concerning Petitioner's
interaction with Ms. Dinkins.  Ex. A at 43-44.  This evidence
included Petitioner "screaming and yelling" at Ms. Dinkins inside
of the house, and Petitioner standing over her and threatening her.
Id. at 43.  Of import, apparently neither the prosecution nor the
defense was able to locate Ms. Dinkins prior to trial.  Although

---

[9] The police listed Ms. Dinkins as the passenger/witness in
the vehicle.  Ex. A at 2.

the state listed her as a category A witness and provided an address for her, Ms. Dinkins was not located at the address provided by the state. Ex. A at 13. She was also not located at the alternative address provided by the state and mentioned by Petitioner. Id. at 21; Ex. K at 131. By the date of the trial, Ms. Dinkins had neither been located nor deposed. At trial defense counsel said: "How do I know she's not cooperative? Anyway this woman is gone, we haven't even deposed her." Ex. D at 219.

Petitioner is not entitled to relief on ground eight of the Petition. Deference under AEDPA should be given to the state court's decision, which was affirmed on appeal. The adjudication of this claim is not contrary to or an unreasonable application of the law, or based on an unreasonable determination of the facts. Ground eight is due to be denied.

## Ground Nine

In his ninth and final ground, Petitioner asserts a denial of due process of law based on the First District Court of Appeal's affirmance of the trial court's decision denying his post conviction motion. In particular, Petitioner complains that the deposition transcripts were not transmitted to the First District Court of Appeal, and the appellate court conducted its review of the trial court's decision without reviewing the deposition transcripts. See Ex. Q at 18-19. Respondents contend this type of alleged error in a state collateral proceeding is not cognizable in federal habeas review. Response at 13.

- 35 -

First, the Court notes that the trial court was not presented with the deposition transcripts for its review of the post conviction motion.  Ex. K.  Additionally, the deposition transcripts were not submitted at the evidentiary hearing.  Ex. K.  As noted by Respondents, the appellate court implicitly determined that the record was sufficient to resolve the issues before it when it denied rehearing en banc.

Upon review, the First District Court of Appeal affirmed the decision of the trial court and denied rehearing en banc.  These decisions of the First District Court of Appeal are entitled to deference under AEDPA.  They involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.  Therefore, Petitioner is not entitled to relief on ground nine of the Petition because the state court's decisions were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In the alternative, to the extent that Petitioner is complaining about a defect in the collateral proceeding (the denial of the post conviction appeal and the denial of rehearing en banc), he does not state a claim for habeas relief.  The Eleventh Circuit has repeatedly found:  "defects in state collateral proceedings do not provide a basis for habeas relief." Carroll v. Sec'y, DOC, 574

F.3d 1354, 1365 (11th Cir.) (citations omitted), <u>cert</u>. <u>denied</u>, 558 U.S. 995 (2009).  A claim of constitutional dimension has not been presented, and the ground is due to be dismissed.

### CERTIFICATE OF APPEALABILITY

If Petitioner appeals, the undersigned opines that a certificate of appealability is not warranted.  <u>See</u> Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  <u>See</u> <u>Slack</u>, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the

petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of November, 2013.

ROY B. DALTON, JR.
United States District Judge

- 38 -

```
sa 11/5
c:
Roy James Edwards
Counsel of Record
```